UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


TAMI REMIEN and DEBRA FLETCHER,  )
on behalf of themselves and all others    )
similarly situated,    )
    )
             Plaintiffs,    )
    )    04 C 3727
    vs.    )
    )
EMC CORPORATION,    )
    )
             Defendant.    )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on two motions. The first, filed by Plaintiffs Tami Remien and Debra Fletcher, seeks to compel production of supplemental documents under Rule 26(e) and a 28-day period to conduct any necessary follow-up discovery stemming from any newly produced materials. The second, filed by Defendant EMC Corporation, requests summary judgment on the disparate impact claims set out in the Plaintiffs' Second Amended Complaint. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part; EMC's motion is granted.

## BACKGROUND

According to the allegations of the Second Amended Complaint, Remien and Fletcher are former employees of EMC. Remien's tenure spanned from February 2001

to December 2003; during that time, she worked as a salesperson for various clients of EMC such as Motorola. Fletcher worked for EMC from October 1999 to July 2003; she was an account representative, a district manager, and a global account manager.

Remien and Fletcher each allege that they were subjected to individualized mistreatment in connection with their jobs. In addition, Plaintiffs describe how EMC sales personnel would frequent strip clubs, use what Plaintiffs perceive to be male-oriented language or behavior in meetings or office events, and use sexually hostile or derogatory comments.

Plaintiffs also contend that EMC engaged in systemic discrimination against women in its sales force by assigning them sales quotas, accounts, and territories that were less favorable than those given to male salespeople as well as excluding them from the company's management pipeline. Plaintiffs advance anecdotes and statistics to support the notion that these practices took place throughout the company and were particularly rampant within the sales force.

Each plaintiff filed a charge with the EEOC on August 13, 2003, alleging sex discrimination and retaliation. Remien's charge contended that EMC had discriminated against her on the basis of her sex in a variety of ways, including preventing her from working on any sales accounts and failing to provide the same support to her career development that it provided to male employees within its Chicago office. She also

alleged that EMC engaged in discriminatory behavior toward women throughout its nationwide sales business by failing to promote women and taking sex, pregnancy, or marital and parental status into account when making employment decisions. Fletcher's charge included the same allegations of systemic discrimination as well as assertions that she individually experienced denials of compensation, demotion, and constructive discharge.

After proceedings before the EEOC were completed, Plaintiffs filed the instant suit. In addition to reiterating the allegations pertaining to their individual experience, the complaint contains putative class allegations that EMC violated federal law by discriminating against female employees in their sales offices with respect to compensation, promotion, attrition, and quota assignment. Because of the potential for a class action, the parties have thus far confined their discovery efforts to addressing class issues; under the supervision of the assigned magistrate, they have engaged in extensive fact and expert discovery pertaining to class certification. Of significance to Plaintiffs' current motion to compel, Remien and Fletcher requested EMC to provide

> all complaints and all documents related to complaints (whether oral, written, formal, or informal) made by or on behalf of any EMC employee relating to any alleged incident of sex discrimination..., sexual harassment, or retaliation for complaining about or otherwise opposing sex discrimination or harassment.

Request 10, Plaintiffs' Second Set of Class Discovery Requests (Ex. 7 to Pls.' Motion to Compel). In connection with their individual claims, Plaintiffs requested the same

types of documents as those sought in Request 10, for employees working in the same division as the Plaintiffs between July 1995 and early 2005. Request 30, Plaintiffs' First Set of Individual Discovery (Ex. 8 to Pls.' Motion to Compel). EMC provided documentation responsive to both of these requests through April 2005.

Ultimately, a cut-off date for all matters pertaining to the class certification issue, including expert discovery, was set for January 6, 2006. Four days later, EMC filed three motions for summary judgment, each attacking a different aspect of the case. For various reasons, decisions on these three motions were delayed. In November 2006, Plaintiffs moved to certify "a class of current and former female EMC sales employees subjected to EMC's discriminatory pay and management selection policies and practices." Pls.' Mem. in Supp. of Mtn. for Class Certification, at 1 [Doc. 174]. In light of the pending certification motion, we denied the three summary judgment motions without prejudice. On the issue of pay practices, Plaintiffs supported their call for class treatment with the opinions of Dr. Jerry Goldman. EMC challenged the admissibility of Goldman's opinions and testimony, in part through the criticisms of Dr. Joan Haworth, whose testimony and opinions Plaintiffs in turn moved to strike. To resolve those issues, the matter of the admissibility of the respective experts was set for an in-court hearing in September 2007.

In their motion for class certification, Plaintiffs supported their arguments on the issue of commonality with declarations of several women who claimed they were

subjected to the objectionable practices similar to those described in the complaint.  In responding to the motion for class certification, EMC described these declarations as "stale" and centered "in the distant past."  Def.'s Opp. to Pls.' Mtn for Class Certification, at 24-25 [Doc. 196].  Since filing the complaint, Plaintiffs had received information that the identified practices had continued after the time period directly at issue in the case.  Exs. 1, 2 to Pls.' Mtn. to Compel [Doc. 223].  Thus, to counter the characterizations in the response and the implicit argument that the problems Plaintiffs alleged had been rectified, Plaintiffs requested that EMC supplement the documents it had previously supplied in response to Requests 10 and 30 by producing complaints filed in the two years since the production was initially made.  While acknowledging that additional complaints had been filed, EMC refused to provide any additional discovery.  Plaintiffs then filed the current motion to compel production of these documents as well as requesting leave to conduct additional discovery depending on the contents of the materials produced.

Meanwhile, EMC renewed its motions for summary judgment.  One of the motions sought summary judgment of Remien and Fletcher's disparate impact claims by arguing that such claims were not included in their EEOC charges and so were not administratively exhausted, a necessary prerequisite to a federal suit to pursue the same claims.

In September 2007, we held four days of hearings to test Goldman's opinions and ultimately concluded that they were not admissible. Because of the impact of this ruling on the viability of the claims based upon discrimination in compensation, we permitted Plaintiffs an opportunity to submit an amended motion for class certification. Other pending motions that the class certification decision would potentially impact were denied without prejudice. The two motions we consider herein are independent of the class issues and thus are ripe for decision.

## LEGAL STANDARDS

### A. Motion to Compel Supplemental Document Production

Fed. R. Civ. P. 26(e)(1) provides that a party who has made a disclosure or other discovery response must supplement the disclosure or response if that party either learns that it is incomplete or incorrect in some material respect or if it is ordered to supplement by the court. The sanction for failure to abide by these rules can be substantial; Rule 37(c)(1) states that "[i]f a party fails to provide information...as required by Rule 26(a) or (e), the party is not allowed to use that information...to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The rule provides a court discretion to impose additional sanctions if it deems them appropriate.

**B. Motion for Summary Judgment**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Id.* The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

### A. Plaintiffs' Motion to Compel

Plaintiffs' request for additional documents from EMC is founded in Fed. R. Civ. P. 26(e). They have requested that EMC be required to turn over "documents concerning ongoing complaints of gender discrimination or retaliation by absent class members, which EMC concedes exist." Pls.' Mtn. to Compel, at 1 [Doc. 223]. EMC opposes any additional production, claiming that it has no duty to supplement its previous production since the requested documents were not in existence when the original request was made.

EMC argues that supplementation is required only if previous production was incomplete or incorrect. It is true that an independent duty to supplement arises by operation of the rule if the original discovery response was somehow lacking. *See, e.g., Mannoia v. Farrow*, 476 F.3d 453, 456-57 (7th Cir. 2007); *Fortino v. Quasar Co.*, 950 F.2d 389, 396 (7th Cir. 1991). However, the fact that the requested documents were not in existence at the time of the original production is not an automatic ban to their production now. *See Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 671 (7th Cir. 1996). In addition, the reference within Rule 26(e) to a duty to supplement if such supplementation is ordered by the court removes the possibility that such a duty can only arise under the alternative situation cited, in which a party learns that a previous disclosure was incorrect or incomplete.

Here, we find supplementation is appropriate in light of the fact that Plaintiffs' request is prompted by EMC's voluntary injection of practices postdating Plaintiffs' previous requests into their response to the class certification motion. Undoubtedly, the current state of affairs at the company does not directly impact on the issues set out in Plaintiffs' complaint, but by introducing this characterization, EMC has opened the door to Plaintiffs to examine the veracity of the statements made in the opposition brief. Furthermore, EMC has conceded that the requested documents exist, so the burden on EMC to identify and produce them is minimal.

We are, however, cognizant that later practices at EMC are of limited relevance to a determination of what was occurring during Remien and Fletcher's employment and that a significant amount of time and effort has already been expended on class discovery. Consequently, we will not grant leave at this time for any discovery beyond the provision of the documents identified in Plaintiffs' motion to compel. In addition, the potential scope of relevant complaints was significantly circumscribed by the striking of the participation of Dr. Goldman; complaints pertaining solely to compensation no longer bear on the issues presented by the remaining allegations set out by the Plaintiffs. Consequently, EMC is ordered to produce any complaints of discrimination in promotion, attrition, quota allocation, or retaliation for challenges to such practices at the company filed between January 1, 2005 and April 6, 2007, to the extent that they have not already been produced.

**B. EMC's Motion for Summary Judgment on Individual Disparate Impact Claims**

EMC's motion for summary judgment rests on the notion that disparate treatment and disparate impact are separate theories of discrimination. Under the first theory, an employer treats members of a protected class less favorably than other employees not within that class and does so with a discriminatory motive. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 (1977). Alternatively, a disparate impact theory involves employment policies or practices that are neutral on their face with respect to employees within and without the plaintiffs' protected class but that have a disproportionately adverse impact on members of the protected class. *Id.* The different impact need not be the product of a discriminatory motive. *See Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996). Though both theories can apply to a single set of facts, the presence of discriminatory intent will take a claim out of the realm of disparate impact and into that of disparate treatment. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 512-13 (7th Cir. 1996).

Before a plaintiff can sue under Title VII in federal court, he or she must exhaust administrative remedies available through the EEOC. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Thus, the contents of a plaintiff's federal complaint are constrained to grounds that are actually stated or that are "like or reasonably related to" those actually stated in a charge brought before the EEOC. *Jenkins v. Blue Cross Mutual Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en

banc).  An allegation within a complaint is like or reasonably related to a contention within an administrative charge if the allegation could be expected to be explored during the course of the EEOC investigation.  *See*, *e.g.*, *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002).

The Plaintiffs' EEOC charges, fairly read and understood, explicitly allege that EMC intentionally discriminated against them and against women as a class.  While it is true that the law does not require a talismanic expression of a particular legal form of grievance, there is a necessity for the EEOC charges to provide that a facially neutral policy or policies resulted in unintended but adverse consequences to the protected class.  Whatever language may be chosen to describe allegations of discrimination, it must at least be sufficient to capture, by way of description or specific identification of a particular practice, the disparate impact that befalls the class.

Plaintiffs concede that their charges do not specifically invoke the phrase "disparate impact" but urge this court to look to the substance of the charges instead, which they insist is replete with references to EMC policies and practices that could underpin a disparate impact theory of liability.  Though Plaintiffs refer in several instances to policies, patterns, and practices that were used throughout the company to the disadvantage of female employees, a fundamental component of each of the policies, patterns, or practices is using women's gender as an intentional basis for the less advantageous treatment.  For instance, Plaintiffs contend that EMC managers

deliberately excluded women from the management pipeline to keep their upper ranks exclusively male. This is a disparate treatment theory; to state that there was a policy of such deliberate exclusion does not transform the allegation into a claim of disparate impact. Conceivably, the pay practice claims that Plaintiffs brought relying upon Dr. Goldman's opinion could have supported a disparate impact theory of liability, but now that those claims are no longer under consideration, we must agree with EMC's position that Plaintiffs' EEOC charges support inclusion of only disparate treatment claims in this lawsuit. To conclude otherwise would be to eviscerate EEOC's authority and obligation to fully investigate and conciliate the Plaintiffs' underlying claims in this case.

## CONCLUSION

Based on the foregoing analysis, Plaintiffs' motion to compel supplementation of discovery is granted in part and denied in part. EMC's motion for summary judgment on Plaintiffs' claims of disparate impact discrimination is granted.

Charles P. Kocoras
_____
Charles P. Kocoras
United States District Judge

Dated:  March 26, 2008