UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMI REMIEN and DEBRA FLETCHER, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 04 C 3727 |
| EMC CORPORATION, | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Plaintiffs Tami Remien and Debra Fletcher for class certification pursuant to Fed. R. Civ. P. 23. For the reasons set forth below, the motion is denied.

## BACKGROUND

Remien and Fletcher are former employees in EMC's Chicago office. Remien's tenure spanned from February 2001 to December 2003; during that time, she worked as a sales representative. Fletcher worked for EMC from October 1999 to July 2003; she was an account representative, a district manager, and a global account manager in the sales department.

Remien and Fletcher each allege that they were subjected to individualized mistreatment in connection with their jobs. In addition, they contend that EMC condoned and ignored sexual discrimination and harassment and retaliation for efforts to combat the same to such a degree that it became de facto company policy and standard operating procedure.

Each plaintiff filed a charge with the EEOC on August 13, 2003, alleging discrimination on the basis of her sex as well as retaliation. Remien's charge contended that EMC had discriminated against her in a variety of ways, including preventing her from working on any sales accounts and failing to provide the same support to her career development that it provided to male employees within the Chicago office. In addition, she alleged that EMC engaged in discriminatory behavior toward women throughout its nationwide sales business with practices, which included failure to promote women and taking sex, pregnancy, or marital and parental status into consideration when making employment decisions. Fletcher's charge included the same allegations of systemic discrimination as well as assertions that Fletcher individually experienced denials of compensation, demotion, and constructive discharge.

After receiving their right-to-sue letters from the EEOC, Remien and Fletcher filed the instant case. According to the current complaint,[1] EMC engages in systemic

---

[1] The complaint has been amended twice since the case was filed.

discrimination against women in its sales force. Plaintiffs contend that this took the form of less favorable treatment in compensation, promotion, attrition, and quota assignment. Plaintiffs' theory of liability rests on anecdotal and statistical evidence of EMC's company-wide policies and practices with regard to these aspects of employment in the sales force.

The parties engaged in extensive discovery proceedings with regard to the issue of class certification. When that process was completed, Plaintiffs moved to certify "a class of current and former female EMC sales employees subjected to EMC's discriminatory pay and management selection policies and practices." Pls.' Mem. in Supp. of Mtn. for Class Certification, at 1 [Doc. 174]. Plaintiffs supported their call for class treatment of compensation claims with the opinions of Dr. Jerry Goldman. EMC challenged the admissibility of Goldman's opinions and testimony, in part through the criticisms of Dr. Joan Haworth, whose testimony and opinions Plaintiffs in turn moved to strike. To resolve those issues, the matter of the admissibility of the respective experts was considered during four days of hearings in September 2007. As a result of the hearings, we ultimately concluded that Goldman's opinions were not admissible. Because of the impact of this ruling on the viability of the claims based upon discrimination in compensation, we permitted Plaintiffs an opportunity to submit the instant amended motion for class certification, which they did on June 11, 2008.

## LEGAL STANDARD

To be certified as a class action, a claim must first satisfy four criteria: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The first two focus on the characteristics of the class as a whole: the number of potential class members must be so large that joinder would be impracticable, and legal or factual questions presented in the putative class action must be common to all class members. Fed. R. Civ. P. 23(a)(1), (a)(2). The third and fourth concentrate on the attributes of the parties seeking to represent the class: the claims or defenses of those representatives must be of the same type as those of the class they seek to represent, and the representatives must be able to protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a)(3), (a)(4).

If an action shows each of these four attributes, the inquiry shifts to examine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997). Rule 23(b)(2) allows certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(3) specifies that a class can be certified if the common factual or legal questions identified for purposes of Rule 23(a)(2) predominate over issues that

pertain only to individual class members and if adjudicating the controversy as a class action would be superior to other possible methods. The party who seeks class certification bears the burden of showing that the Rule 23 requirements are satisfied. *Amchem*, 521 U.S. at 614, 117 S. Ct. at 2245. Moreover, the class must be identifiable as a class. *Oshana v. Coca-Cola, Inc.*, 472 F.3d 506, 513 (7th Cir. 2006).

## DISCUSSION

The class that Plaintiffs' motion asks us to certify consists of "female sales representatives and managers employed in the U.S. sales force of EMC Corporation...from January 1, 2001 through the present."[2] Pls.' Mtn. for Class Certification [309], ¶ 1.

---

[2]Though the parties' briefs include arguments directed toward a subclass of female employees who sought but did not achieve promotion within the sales department, Plaintiffs do not propose a definition that is limited to those employees. Although a district court has the power to construct subclasses under Fed. R. Civ. P. 23(c)(5), it has no obligation to do so. *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 408, 100 S. Ct. 1202, 1215 (1980). The creation of subclasses can compromise the ability to satisfy numerosity, to efficiently manage the case, or to defeat superiority in an action seeking certification under Rule 23(b)(3). Manual for Complex Litigation (Fourth) § 21.23. Given the specific circumstances of this case, it is this court's view that consideration of subclasses in the absence of a proposal from Plaintiffs would be ill-advised.

## A. Rule 23(a) Factors

*1. Numerosity and Ascertainability*

As proposed, the class would number more than 200 potential members spread over several states. Such a group is sufficiently large and geographically dispersed to make joinder impracticable.

Although Rule 23 does not explicitly contain the requirement that has come to be known as ascertainability, Seventh Circuit case law clearly calls for it to be present in any certified class. *Oshana*, 472 F.3d at 513. To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). The definition Plaintiffs propose describes an identifiable group of employees through objective criteria and thus satisfies ascertainability.

*2. Commonality*

Questions of law or fact common to all class members result if the injuries claimed by the class arise from a common nucleus of operative fact. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In such an instance, the commonality requirement of Fed. R. Civ. P. 23(a)(2) will be met. Here, Plaintiffs argue that the common nucleus of operative fact lies in the use of subjective practices that led to attrition and exclusion from management more often for women than for men at EMC. Pls.' Mtn. For Class

Cert. pp. 27-28. According to Plaintiffs, EMC acted with reckless indifference to the discriminatory effects of using these subjective criteria in making promotion decisions. *Id.*

However, it is undisputed that nine promotions were awarded to women between 2000 and 2004. Pls.' Ex. 1, p. 17. Those nine women would not have injuries arising from the same nucleus of operative fact as women who sought promotions but did not receive them. Moreover, the proposed class would include women who did not wish to be promoted from the job they held during the time period at issue. *See* EMC's Ex. 10, ¶ 10; Ex. 11, ¶ 5; Ex. 13, ¶ 9. These women would not have suffered any cognizable injury from policies in place with respect to promotion, so they would not have questions of law or fact in common with women who sought but were denied promotion. With regard to injuries manifesting from attrition rates, Remien and Fletcher have not produced evidence that all women who worked as sales representatives or managers left their employment such that questions regarding women leaving their jobs would be common to all. Pls.' Ex. 1, p. 21. While factual variations as to the degree or type of injury will not preclude a finding of commonality, the class proposed here would present variations in whether the effects Plaintiffs identify existed at all for all class members. Such a circumstance goes well beyond factual variability. Consequently, we find that Plaintiffs have not met their burden of demonstrating

questions of law or fact common to all female sales representatives and managers at EMC for the last seven and a half years.

  The lack of commonality requires that Plaintiffs' motion be denied, as certification is not appropriate unless all four of the 23(a) factors are satisfied. *Amchem*, 521 U.S. at 614, 117 S. Ct. at 2245. Moreover, the absence of this factor has a significant spillover effect into the factors of typicality, adequacy of representation, the availability of class-wide injunctive relief, and the predominance and superiority considerations required by Rule 23(b)(3). These issues are addressed in greater detail below.

*3. Typicality*

  Fed. R. Civ. P. 23(a)(3) requires that Plaintiffs' claims be typical of the claims of the class, meaning that they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and...are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The presence of some variation in the factual underpinnings of the claims is not fatal to a finding of typicality as long as the representative's claims share the essential characteristics of those of the class as a whole. *Oshana*, 472 F.3d at 514.

The absence of common injury and consequent common questions of law or fact precludes a finding of typicality. The proposed class would not as a whole have claims with which Plaintiffs' claims could share essential characteristics.

*4. Adequacy of Representation*

The final subsection of Fed. R. Civ. P. 23(a) requires that the class representative "fairly and adequately protect the interests of the class." This requirement has been interpreted to consist of two components: adequacy of the named plaintiff to represent and thereby to protect the interests of absent class members and adequacy of class counsel. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). On the first component, a class representative must have the same interests and have incurred the same legal injury as the class members. *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). This ensures consistency in the positions taken or arguments advanced by the class representative and the class as a whole. *Id.*

There is no dispute that Plaintiffs' counsel would satisfy the adequacy requirement of Rule 23(b)(4). However, since the proposed class does not have consistent interests and claims, the positions and arguments taken by Remien and Fletcher in pursuit of their individual claims would not bear the requisite consistency with the interests of all of the various members of the class such that we could find that

their interests would be fairly and adequately protected by Plaintiffs' efforts to vindicate the individual legal rights they contend EMC violated.

**B. Rule 23(b) Certification**

As stated above, Plaintiffs' inability to demonstrate the presence of 23(a) factors precludes certification of the proposed class. However, even if that were not the case, the nonhomogeneity of the proposed class would also prevent a finding that this action presents one of the situations described in the latter two subsections of Rule 23.

*1. Rule 23(b)(2)*

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief...is appropriate respecting the class as a whole."

According to Plaintiffs, certification of the proposed class is available under Rule 23(b)(2) because EMC "has acted or refused to act on grounds generally applicable to the class" that "adversely affected class members as a whole" and that could be remedied by an injunction requiring "an end to EMC's discriminatory employment practices," "implementation of objective practices that make income-generating and management opportunities available to men and women on an equal footing," and "a program to monitor, or audit, the application and results of EMC's employment

practices for gender bias."³ Pls.' Mtn. for Class Cert., p. 38-39. Aside from the recitation of several rules pertaining to Rule 23(b)(2) certification standards, this is the sole support offered Plaintiffs' argument on why injunctive relief is central to the remedies they seek.

Such broad-brush assertions are insufficient to demonstrate that Rule 23(b)(2) certification would be appropriate for the proposed class. That subsection presumes "the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. International Union of Operating Engineers*, 216 F.3d 577, 580 (7th Cir. 2000). Despite Plaintiffs' attempts to continue to advance claims of disparity in compensation, as stated earlier, the inadmissibility of Goldman's opinions removes their ability to do so. None of the other injuries posited touches every member of the proposed class, so an injunctive remedy would have to differentiate among the various class members. The lack of a

---

³Fed. R. Civ. P. 65(d) mandates that an injunction issued by a federal court be detailed and specific, thus providing a solid foundation for subsequent enforcement efforts and obviating extended battles over its scope and meaning. *See Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 646 (7th Cir. 2002). It is difficult to imagine an injunction that would put in place the sweeping system of oversight Plaintiffs envision and still satisfy the requirements of this rule.

common injury definitively prevents the interests of the proposed class from being cohesive and homogeneous.

Thus, Plaintiffs have not demonstrated that EMC acted (or failed to act) on grounds applicable to all its female sales representatives and managers for the last seven and a half years. Final injunctive relief would not be appropriate to all of those women, so Rule 23(b)(2) will not provide an avenue to certification of the class proposed.

*2. Rule 26(b)(3)*

The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation. Though the predominance factor is undoubtedly related to the commonality called for in Rule 23(a)(2), the predominance factor of Rule 23(b)(3) is "far more demanding" than the commonality requirement. *Amchem*, 521 U.S. at 623-24, 117 S. Ct. at 2231, 2249-50. While commonality looks to whether class members share factual or legal issues, the predominance inquiry examines whether the shared attributes will be a main focus of the litigation. *See id.*

As described above, the proposed class does not share factual or legal issues even to satisfy commonality, let alone the more demanding standard required to show predominance. Moreover, given the breadth of individual employment tracks and work situations experienced by so many women over such an extended time span in a variety of geographic locations, the likelihood that any main focus applicable to all would

emerge is extremely small, making class treatment a decidedly inferior method of adjudicating the various legal claims of these women. Consequently, the motion to certify a class of female sales representatives and managers employed in EMC's U.S. sales force from January 1, 2001 through the present is denied.

## CONCLUSION

Plaintiffs' motion [309] for certification of a class of all female sales representatives and managers employed by Defendant EMC in its sales force from January 1, 2001, to the present is denied.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   August 28, 2008